IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| NYOKA O. REED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil No. 2014-73 |
| ) | |
| VIRGIN ISLANDS WATER & POWER ) | |
| AUTHORITY, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

### MEMORANDUM OPINION AND ORDER

This case is before the Court on the application [DE 2] of *pro se* plaintiff Nyoka O. Reed to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1) and for initial screening of plaintiff's pleading pursuant to 28 U.S.C. § 1915(e)(2).[1] Plaintiff also requests a change in venue and appointment of counsel.

### I. FACTUAL ALLEGATIONS[2]

Plaintiff is a sixty-one year old woman and a resident of St. Thomas, U.S. Virgin Islands. Plaintiff brings this employment discrimination action against the Virgin Islands Water and Power Authority ("WAPA"), her present employer. Plaintiff has worked at WAPA for over thirty-four years. Plaintiff alleges age discrimination and retaliation in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*.

---

[1] Section 1915(a)(1) provides "any court of the United States may authorize the commencement . . . of any suit, . . ., civil or criminal, . . . , without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets such [person] prisoner possesses that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1) (alteration in original); *see Leatherman v. Obama*, 2012 U.S. Dist. LEXIS 158682, at *3 n.1 (W.D. Pa. Oct. 22, 2012) (holding section 1915(a) is not limited to prisoner suits) (citing *Jones v. NATO*, 1998 U.S. Dist. LEXIS 3569, at *2 (E.D. Pa. Mar. 20, 1998)).

[2] The Court derives the facts controlling its analysis from plaintiff's letter to the Clerk of Court and the exhibits attached thereto, including documentation filed with the Equal Employment Opportunity Commission.

Plaintiff's "complaint" is in the form of a letter addressed to the Clerk of Court that lacks factual details. Rather, in her letter, plaintiff directs the Court's attention to almost 200 pages of documents regarding her "labor related complaint[]," including correspondence with former counsel, the U.S. Department of Labor Civil Rights Center, the U.S. Virgin Islands Public Employees Relations Board ("PERB") and defendant. Plaintiff also included filings from her arbitration proceeding regarding this matter, including the arbitrator's decision, which describes the facts giving rise to this suit as follows:

> The WAPA Employees Association, Local 602 (hereinafter "the Union") brought this grievance on behalf of one of its members, Nyoka O. Reed, against [WAPA]. Ms. Reed was a Senior Cashier for [WAPA] who was terminated by it following a transaction she performed on August 16, 2013. It is alleged that, in her capacity as Senior Cashier, Ms. Reed accepted $261.00 for a utilities bill tendered in the amount of $160.89 from a Mr. Leyan Antoine on behalf of Chantele S. Looby. Eleven cents ($.11) was returned to Mr. Looby [sic]. He returned several minutes later claiming that he had been shorted $100.00. As a result of further investigations by [WAPA], Ms. Reed was terminated [on September 23, 2013[3]] for breach of [WAPA's] policies.

[DE 1-3 at 1-2] (alterations added). According to plaintiff, she received "a letter of termination after 34 years and approximately 7 months at [WAPA]." [DE 1 at 3]. Plaintiff's termination occurred one day after her 60th birthday. *Id.*

On October 29, 2013, plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), alleging age and retaliatory discrimination. [DE 1 at 8]. In her charge, plaintiff alleged WAPA retaliated against her for complaining often about "unfair labor practices." Plaintiff alleged further that two younger female cashiers (one 31 years old and the other in her early 40's) "involved with obtaining more money" from customers received "[f]avorable treatment" compared to plaintiff. [DE 1 at 8].

---

[3]     DE 1-3 at 30.

On March 25, 2014, the arbitrator found that WAPA "did not present clear and convincing evidence that Ms. Reed was justly terminated, and thus the grievance by the Union will be upheld." [DE 1-3 at 4]. WAPA reinstated plaintiff on April 22, 2014 [DE 1-3 at 30]. The EEOC mailed a "Notice of Right to Sue" form to plaintiff on May 19, 2014. [DE 1 at 1]. Plaintiff filed the instant action on August 19, 2014, claiming WAPA "reinstated [her] back to work like a new employee with limited benefits or a thorough briefing of new policies and procedures." [DE 1 at 4]. Plaintiff includes as an exhibit a letter from a law firm to WAPA that claims WAPA is denying plaintiff "the benefits she earned over her years of employment," including participation in the company's donated leave program, denial of accrued annual and sick leave, denial of her ability to retire with 35 years of service and denial of back pay.[4] [DE 1-3 at 13].

## II. STANDARD OF REVIEW

Where a plaintiff has obtained leave to proceed *in forma pauperis*, a court must screen the complaint for cognizable claims and *sua sponte* dismiss all or any part of an action that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B). Furthermore, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id*. at 327. "A complaint is malicious when it 'duplicates allegations of another [] federal lawsuit by the same plaintiff.'" *Daley v. United*

---

[4] The extent of the firm's representation of plaintiff prior to initiation of this lawsuit is unclear.

*States Dist. Court*, 629 F. Supp. 2d 357, 359-360 (D. Del. 2009) (alteration in original) (quoting *Pittman v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993)); *see also Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (stating "malicious" in the context of sections 1915(e) "is more usefully construed as intended to harass").

Whether a complaint fails to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is governed by the same standard as Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). Accordingly, a court must determine whether the complaint includes "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks omitted). Finally, the remaining ground for dismissal under § 1915, immunity of the defendants, relates to the protection the law affords certain governmental entities and officials against particular types of lawsuits. 28 U.S.C. § 1915(e)(2)(B)(iii).

Pleadings drafted by a *pro se* litigant are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, this Court is charged with liberally construing a pleading filed by a *pro se* litigant to allow for the development of a potentially meritorious claim. *See id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The principles requiring generous construction of *pro se* complaints are not without limits, however. Courts are not required "to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II.    DISCUSSION

**A.    Motion to proceed in forma pauperis**

The federal *in forma pauperis* ("IFP") statute, 28 U.S.C. § 1915, "is designed to ensure

Case: 3:14-cv-00073-JRS-RM   Document #: 3   Filed: 12/22/14   Page 5 of 13

*Reed v. WAPA*
Civil No. 2014-73
Page 5

that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). IFP status is based upon a showing of indigence. *Deutsch v. United States*, 67 F.3d 1080, 1085 n. 5 (3d Cir. 1995). A party need not be destitute to warrant such status. *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948). An affidavit demonstrating that the petitioner cannot, because of her poverty, provide herself and any dependents with the necessities of life is sufficient. *Id*.

Upon review of the application, the Court finds that it is incomplete thereby preventing the Court from assessing plaintiff's pauper status. In particular, plaintiff failed to properly "specify pay period" (i.e., weekly, biweekly or monthly) as required under paragraph two. Plaintiff also failed to provide the amount of her monthly expenses and outstanding financial obligations as required under paragraphs six and eight, respectively. Rather, plaintiff placed the burden on the Court to determine bill totals and debt figures by sorting through almost 200 pages of exhibits for recent bills and requesting the information directly from various lenders. Accordingly, plaintiff's application to proceed *in forma pauperis* will be denied without prejudice for her to resubmit a properly completed affidavit, if she so chooses.

**B.     Screening pursuant to 28 U.S.C. § 1915**

1.     <u>Plaintiff's claim is timely</u>

The ADEA requires that a complainant exhaust her administrative remedies prior to filing a complaint in federal court. *See* 29 U.S.C. § 626(d)(1) (requiring a complainant to file a charge with the EEOC prior to commencing an action in district court against that party). In order to exhaust administrative remedies, an individual must file a charge with the EEOC within 180 days of the incident. 29 U.S.C. § 626(d)(1). After filing a charge with the EEOC, the complainant must wait at least 60 days before commencing a federal suit under the ADEA. 29

U.S.C. § 626(d). The ADEA, however, does not require that the EEOC issue a right-to-sue letter before a complainant can commence a federal suit. 29 U.S.C. § 626(d)(2) (noting that during the 60-day period, the EEOC "promptly seek[s] to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion"); *accord Seredinski v. Clifton Precision Prods. Co.*, 776 F.2d 56, 62-63 (3d Cir. 1985). In the event that the EEOC issues a right-to-sue letter, as here, the complainant must file her federal suit within 90 days from the receipt of the letter. 29 U.S.C. § 626(e); *see Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 306 (3d Cir. 1983) (stating "the filing requirement of the ADEA could best be characterized as a statute of limitations rather than a jurisdictional prerequisite to suit").

The Court assumes plaintiff filed a timely charge, given the EEOC issued a right-to-sue letter on May 19, 2014. [DE 1 at 1]. Plaintiff does not state when she received notice of this decision. Accordingly, the Court presumes plaintiff received the decision on May 22, 2014. *See Vazquez v. Caesar's Paradise Stream Resort*, 524 Fed. Appx. 831, 832 (3d Cir. 2013) (noting a court presumes a party receives a document three days after it is mailed – "a presumption provided for by Rule 6(d) of the Federal Rules of Civil Procedure and endorsed by this Court in [*Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999)]"). Plaintiff's complaint, filed on August 19, 2014, is therefore timely.

2. ADEA Claims

Liberally construing plaintiff's filings, plaintiff brings claims for wrongful termination and retaliation under the ADEA.

i. *Wrongful termination*

The ADEA makes it unlawful for an employer "to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). To state a claim of wrongful termination under

the ADEA, a plaintiff must allege that: "(1) she is forty years of age or older; (2) the defendant took an adverse employment action against her; (3) she was qualified for the position in question; and (4) she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus"[5] or "persons outside of the protected class were treated more favorably in a manner that gives rise to an inference of discrimination." *Palma v. Volunteers of Am.*, 2006 U.S. Dist. LEXIS 5176, at *8 (E.D. Pa. Feb. 9, 2006).

Plaintiff alleges here that she is over the age of forty; thus, she is a member of the protected class under the ADEA. Plaintiff's discharge from her position with WAPA satisfies the second element. *See Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 75-76 (2006) (defining a tangible, adverse employment action as a "significant change in employment status, such as … *firing*…."); *Griesbaum v. Aventis Pharms.*, 259 Fed. Appx. 459, 470 (3d Cir. 2007) (stating "it is hard to understand how any employment action could be more adverse than a termination of the employment"). Plaintiff alleges that she has worked for WAPA for over 34 years and at the time of her discharge, was the "senior/head" cashier. Finally, plaintiff states two similarly situated cashiers (a 31 year old and one in her early forties) who "obtained more money from customer(s)" were treated more favorably than her. For purposes of § 1915 screening, the Court finds plaintiff adequately pleads disparate treatment based on her age. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) ("The burden of establishing a prima facie case of disparate treatment is not onerous.").

---

[5] *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013); *accord Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998). Where a plaintiff and her replacement differ in age by only two to three years, the plaintiff cannot establish a *prima facie* case of age discrimination. *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 307 (3d Cir. 2004).

ii.      *Retaliation*

To make out a *prima facie* ADEA retaliation claim, a plaintiff must allege "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Culler v. Sec'y of United States Veterans Affairs*, 507 Fed. Appx. 246, 250 (3d Cir. 2012). A plaintiff may establish the requisite causal link between the protected activity and the retaliatory act by, for example, alleging "'temporal proximity' or a pattern of ongoing antagonism sufficient to give rise to an inference of retaliation."[6] *Ullrich v. United States Secy. of Veterans Affairs*, 457 Fed. Appx. 132, 139 (3d Cir. 2012).

Plaintiff has met the first element. The filing of a formal charge with the EEOC regarding age discrimination, as done here, is one "acceptable indicia of the requisite 'protected conduct' under the ADEA." *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir. 1995); 29 U.S.C. § 623(d). The second element is also met. When plaintiff returned to work, while reinstated to her position as senior cashier, she was denied various benefits, including accrued annual and sick leave, back pay, participation in the company's donated leave program, and the ability to retire with 35 years of service.[7] [DE 1-3 at 13]. The third element – a causal connection between plaintiff's protected activity of filing a formal charge alleging age discrimination and her

---

[6]      *See Fasold v. Justice*, 409 F.3d 178, 189-90 (3d Cir. 2005) (stating "when only a short period of time separates an aggrieved employee's protected conduct and an adverse employment decision, such temporal proximity may provide an evidentiary basis from which an inference of retaliation can be drawn").

[7]      While these alleged denial of benefits occurred after plaintiff filed her EEOC charge, they reasonably relate to the initial charge of wrongful termination. *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) (explaining the contents of the EEOC charge frame the scope of any future litigation and "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent ... lawsuit.").

subsequent reinstatement less full benefits – is also sufficiently met for § 1915 screening purposes. The allegations presented give rise to a plausible inference that WAPA's actions taken upon plaintiff's reinstatement are the result of retaliatory animus. Accordingly, the Court finds plaintiff's "complaint" sets forth a plausible retaliation claim.

**C.     Form of Complaint**

A complaint must state facts, not mere legal conclusions, in order to show a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). The Federal Rules of Civil Procedure set forth pleading standards that apply to all litigants. In particular, under Rule 8, a complaint must contain "a short and plain statement of the claim" upon which the plaintiff seeks relief and "a demand for the relief sought." Rule 8(d) requires that "[e]ach allegation [] be simple, concise, and direct." Moreover, Rule 10(b) requires that plaintiff state her claims "in numbered paragraphs, each limited as far as practicable to a single set of circumstances."

Plaintiff's "complaint" does not meet these requirements, rendering the formulation of an answer or responsive pleading impossible. Because plaintiff is proceeding *pro se*, the Court will give her an opportunity to amend her complaint to comply with the requirements of Rule 8 and Rule 10 of the Federal Rules of Civil Procedure. Plaintiff is warned that her amended complaint will replace her original complaint and claims that are not realleged will be deemed abandoned.

**D.     Motion for Change in Venue**

In her letter, plaintiff requests a change in venue, "such as the United States District Court Eastern District of Pennsylvania or other relative [sic] court that has Federal jurisdiction in which I can receive or obtain a fair trial." [DE 1 at 4]. A court may, in its discretion, transfer an action to another district where venue would be proper. *See* 28 U.S.C. § 1404(a). In determining

if a motion to transfer venue is proper, a court is instructed to consider convenience of the parties, convenience of witnesses, and the interests of justice. 28 U.S.C. § 1404(a). In determining whether to grant a motion to change venue, a court is ordinarily "vested with wide discretion." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). The moving party bears the burden of establishing that a change of venue is warranted. *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

Here, plaintiff alleges no grounds favoring transfer. There is no indication that a transfer to another district would be consistent with law. Both plaintiff and defendant reside in the Virgin Islands. Plaintiff's "complaint" involves events that occurred only in the Virgin Islands. Finally, all non-party individuals named in the complaint are employed by defendant. Accordingly, transferring this matter to a district outside of the Virgin Islands does not serve the interests of justice nor would this litigation proceed in a more convenient manner.

### E.     Motion for Counsel

Plaintiff requests court-appointed counsel because of her "extreme financial hardship over these past 10 months plus months without a steady stream of income" resulting from her termination.

It is well settled that "indigent civil litigants possess neither a constitutional nor a statutory right to appointed counsel." *Gordon v. Gonzalez*, 232 F. App'x 153, 156 (3d Cir. 2007). However, a court is empowered with the discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). A court's decision whether to appoint counsel is given wide latitude and will only be overturned if its ruling is clearly an abuse of discretion. *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993).

*Reed v. WAPA*
Civil No. 2014-73
Page 11

If a court finds a plaintiff's claim has arguable merit in fact and law, as here, it then considers the following factors: (1) the plaintiff's ability to present her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (quoting *Tabron*, 6 F.3d at 155). This list is not exhaustive, nor is any one factor determinative. *Parham v. Johnson*, 126 F.3d 454, 458 (3d Cir. 1997).

1.  Plaintiff's ability to present her case

The determination of a plaintiff's ability to present her own case is based on several criteria, including plaintiff's education, literacy and prior work experience. *Tabron*, 6 F.3d at 156. Plaintiff's filings indicate she has worked for WAPA for over 34 years, and she reads, writes and understands English. Her filings evidence her ability to understand legal issues and set forth arguments in support of her claims. Plaintiff also appears to have access to the essential resources to prosecute her claim.

2.  Difficulty of particular legal issues

In cases involving complicated legal issues, courts should be "more inclined to appoint counsel." *Tabron*, 6 F.3d at 156. Plaintiff's claims are standard discrimination claims under the ADEA and do not implicate complicated or novel issues of law. The Court finds the instant legal issues appear within plaintiff's range of competence.

3.  Necessity and ability of plaintiff to pursue factual investigation

Courts must consider the extent of factual investigation necessary to prosecute a claim

and the ability of the indigent plaintiff to pursue the investigation. *Tabron*, 6 F.3d at 156. Situations which are "likely to require extensive discovery and compliance with complex discovery rules" gravitate toward the appointment of counsel. *Id*. At this early stage in the proceedings, it is too difficult to ascertain the investigative needs of plaintiff. That said, the exhibits attached to plaintiff's "complaint" indicate plaintiff is capable of performing the required factual investigation. Moreover, the simplicity of her claims and the seemingly limited number of persons involved suggest this litigation will not require extensive discovery or compliance with complex discovery rules.

4. <u>Plaintiff's capacity to retain counsel on her own behalf</u>

The appointment of counsel is not warranted where the plaintiff can easily afford and attain counsel. *Id*. at 157. Due to plaintiff's incomplete IFP application, the Court is unable to determine plaintiff's indigency status at this time. Nevertheless, this factor does not appear to warrant the appointment of counsel.

5. <u>Extent to which this case is likely to turn on credibility determinations</u>

Cases where adjudication relies solely on credibility determinations favor the appointment of counsel. *Lasko v. Watts*, 373 Fed. Appx. 196, 201 (3d Cir. 2010). Regarding the credibility determination factor, "[w]hile the case ultimately may [] rel[y] upon credibility, it is difficult to imagine a case that does not. Thus, when considering this factor courts should determine whether the case [is] solely a swearing contest." *Parham*, 126 F.3d at 460. This case does not appear to rely solely upon determinations of credibility, and does not appear to be exclusively a swearing contest. Consequently, this factor does not favor the appointment of counsel.

6. <u>Expert witness testimony</u>

The necessity of cross examining expert witnesses may favor the appointment of counsel. *Tabron*, 6 F.3d at 156. However, the appointment of counsel is not necessary in every case warranting expert testimony. *Lasko*, 373 Fed. Appx. at 202. At these preliminary stages, the testimony of expert witnesses does not appear to be necessary. Accordingly, this factor does not favor the appointment of counsel.

Courts must be mindful of the competing interests between the need to provide legal representation to effectively prosecute meritorious cases and the necessity of protecting the limited and "precious commodity" of volunteer legal advocates. *Parham*, 126 F.3d 458. Thus, courts usually reserve the appointment of counsel for situations where there is "a showing of special circumstances." *Smith-Bey v. Petsock*, 741 F.2d 22, 26 (3d Cir. 1984). Upon considering the *Tabron* factors, the Court concludes that the circumstances of this case do not warrant the appointment of counsel.

## IV. CONCLUSION

The premises considered, it is hereby ORDERED as follows:

(1) Plaintiff's application to proceed *in forma pauperis* is DENIED WITHOUT PREJUDICE. Plaintiff may file a complete application if she still desires to proceed *in forma pauperis*;

(2) Plaintiff shall have until **January 22, 2015** to file an amended complaint that complies with the Federal Rules of Civil Procedure. If plaintiff fails to file an amended complaint by the deadline, the Court will recommend this action be dismissed without prejudice and without further notice to plaintiff;

(3) Plaintiff's motion for venue change is DENIED; and

(4) Plaintiff's motion for appointment of counsel is DENIED.

**Dated:** December 22, 2014      S\_____
                                  **RUTH MILLER**
                                  United States Magistrate Judge