IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| NYOKA O. REED | : | CIVIL ACTION |
| | : | |
| v. | : | No. 14-73 |
| | : | |
| V.I. WATER AND POWER AUTHORITY | : | |

## MEMORANDUM

**Juan R. Sánchez, J.**                                                                                                     **March 30, 2018**

Plaintiff Nyoka O. Reed brings claims for age discrimination,[1] enforcement of an arbitration award, and breach of contract in a two-count complaint against her former employer, Defendant V.I. Water and Power Authority (WAPA) arising out of her termination from employment after a customer accused her of theft.[2]

WAPA moves for summary judgment on both counts of Reed's Fourth Amended Complaint. Reed cross-moves for summary judgment on Count II—her claims for enforcement of the arbitration award and breach of contract. Because the Court finds Reed failed to establish a prima facie case of age discrimination, WAPA complied with the arbitration award, and Reed failed to exhaust internal grievance and arbitration procedures, WAPA's motion will be granted and Reed's motion will be denied.

---

[1] Reed raised a demotion-related age discrimination claim pursuant to the Age Discrimination in Employment Act (ADEA) for the first time in her opposition to Defendant V.I. Water and Power Authority's motion for summary judgment. *See* Opp'n to Mot. for Summ. J. 3. The Court construes this new claim as a motion to amend. *See Sola v. Lafayette Coll.*, 804 F.2d 40, 45 (3d Cir. 1986) (finding district court erred by failing to treat plaintiff's new claim, raised for the first time in her opposition brief and during oral argument, as a motion to amend). While WAPA asserts it would be prejudicial for Reed to amend her Fourth Amended Complaint to include this claim at the summary judgment stage, *see* Reply Mem. of Law in Supp. of Mot. for Summ. J. 4–5, it does not explain why. The Court will therefore grant the motion to amend and considers WAPA's motion for summary judgment as to the newly-added claim. *See* Fed. R. of Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires").

[2] In her Fourth Amended Complaint, Reed also alleged a retaliation claim pursuant to the ADEA and a state law defamation claim, but she has voluntarily withdrawn those claims. *See* Opp'n to Mot. for Summ. J. at 4, 7.

**BACKGROUND**[3]

Reed began employment for WAPA in approximately 1978 or 1979. WAPA Statement of Undisputed Facts ¶ 1. In 2003, Reed applied for and was selected to fill the position of Senior Cashier, and she ceased her duties as an Audit Clerk. *Id*. ¶¶ 4, 7–8. At the time Reed moved to the position of Senior Cashier, she was the only individual who held that job title. *Id*. ¶ 9. As Senior Cashier, Reed was a member of the Utility Workers Union of America Local 602, *id*. ¶ 10, and she understood the Union's role was to act as her representative in any disputes with WAPA, *id.* ¶ 11. The Union and WAPA were also parties to a Collective Bargaining Agreement (CBA). *Id.* ¶ 12. The CBA provided, in part, that violations of WAPA's rules or regulations governing employee conduct contained in the CBA or WAPA's incorporated personnel manual would be considered just cause for disciplinary action, including discharge. *Id*. ¶ 13. The CBA also contained grievance and arbitration procedures that covered "disputes, complaints or controversies arising between the parties [] relating to, arising out of, or in connection with or involving questions of an alleged violation, interpretation, application or performance" of the CBA. *Id*. ¶ 122.

Reed testified that while she held the Senior Cashier position, she was subject to age-related discriminatory remarks from Fernando Leonard, her immediate supervisor, and Monique Simon, Customer Service Supervisor. On one occasion in 2012, Leonard told her she was "getting old." *Id.* ¶ 28. Additionally, on several occasions in 2012, Simon told her she was "old and slow," and in September 2013, Simon told her she "could be going through Alzheimer's." *Id.* ¶ 32. However, Executive Director Hugo Hodge and Human Resources Director Denise

---

[3] The following undisputed facts are drawn from evidence in the summary judgment record.

Nibbs never made "any statements to her that were negative references to [her] age." *Id.* ¶¶ 40–41.

As Senior Cashier, Reed understood that she was expected to credit a customer's account when payments were made, and if the customer was paying a bill in cash, she was to return any difference between the amount credited and the amount the customer gave her. *Id.* ¶¶ 46–47. On August 16, 2013, Reed was stationed at a cashier window receiving in-person payments at a Customer Service Office where members of the public could pay utility bills. *Id.* ¶¶ 44–45. After a customer came in to make a utility bill payment, Reed recorded she received $161 for the payment and returned .11 cents to the customer. *Id.* ¶¶ 49–51, 54–55. The customer left, but he returned a couple minutes later and indicated that he was missing $100. *Id.* ¶¶ 56, 58. The customer then spoke to Simon, who performed a "cash count down" of Reed's station and reviewed video footage of the transaction in Reed's presence. *Id.* ¶¶ 58, 60–63. Simon advised Reed that her review of the footage revealed that Reed had received more than $161 from the customer. *Id.* ¶ 64.

Following this incident, in accordance with the CBA and the incorporated personnel manual, WAPA held four hearings—three pre-termination and one post-termination—to address possible violations of the rules and regulations set forth in the personnel manual during the August 16, 2013, incident. Simon, Leonard, Hodge, and Nibbs each participated in various portions of the grievance proceedings. *Id*. ¶¶ 72, 78, 89. Reed attended each hearing with a representative from the Union. *Id*. ¶¶ 67, 72, 78, 80–81, 89. Following her final pre-termination hearing, Reed received a termination letter from Hodge dated September 23, 2013, finding that she "accepted $261 from [the customer] and returned .11 cents in change to him" and advising

3

her that her employment was terminated for violating various provisions of the personnel manual. *Id*. ¶¶ 82, 84.

Reed's Union grieved the termination, and a post-termination hearing was held on October 3, 2013. *Id*. ¶ 89. At the hearing, neither Hodge nor Nibbs made statements that Reed considered to be derogatory or indicated that her age was being taken into account. *Id*. ¶ 90. Following this hearing, Hodge issued a letter concluding there was no basis to reverse Reed's termination. *Id*. ¶ 91.

Thereafter, the Union initiated arbitration. *Id*. ¶ 113. In March 2014, the arbitrator issued a decision in which he found that the "video [footage of the incident] certainly raise[d] questions regarding Ms. Reed's actions," it "[was] possible that Ms. Reed took more money than she should have from the customer," and Reed was "evasive" during the hearing. *Id*. ¶ 116 (internal quotation marks and citation omitted). However, the arbitrator ultimately concluded that WAPA "did not present clear and convincing evidence that Ms. Reed was justly terminated, and thus the grievance by the Union [would be] upheld." *Id*. ¶ 115 (internal quotation marks and citation omitted). WAPA therefore notified the Union that it was reinstating Reed to the position of Senior Cashier effective April 22, 2014. *Id*. ¶ 117.

After her termination, Reed had also filed a complaint with the Public Employees Relations Board against WAPA and the Union, *id*. ¶ 112, arguing that the "[U]nion failed to properly represent her after she was terminated from employment with WAPA," *id*. Ex. 2, at 90. This action was dismissed in a decision dated February 2, 2015, and Reed did not appeal this decision. *Id*. ¶ 123. Reed remained the only Senior Cashier in St. Thomas until she retired on November 22, 2015. *Id*. ¶¶ 118, 126–27, 128.

Reed initiated this action pro se on August 19, 2014. Thereafter, she filed several amended complaints, and after retaining counsel, she filed her Fourth Amended Complaint on August 1, 2016. In Count I of her Fourth Amended Complaint, Reed alleges WAPA "harass[ed her] and ma[de] false and unwarranted accusations, including theft, against [her] from January 2012 through January 2013 in an effort to terminate [her] employment"; (2) "us[ed] false pretexts such as the theft of a paltry $100 to immediately terminate [Reed]"; and (3) discharg[ed] Reed on a "pre-textual ground of inept job performance" in violation of the ADEA. Fourth Am. Compl. ¶ 32. In Count II, she alleges WAPA engaged in a bad faith breach of the parties' collective bargaining agreement by refusing to (1) "honor the arbitration award entered in [Reed's] favor" by not awarding back pay and other benefits; (2) "fully fund [Reed's retirement account even after the arbitration award ordered WAPA to reinstate [Reed]"; (3) pay into Reed's "GERS Retirement Personal Loan Account as scheduled prior to and approximately 8 months after reinstatement"; and (4) "allow [Reed] to fairly participate in [] WAPA's Donated Leave Program." *Id.* ¶¶ 35–36.

WAPA moves for summary judgment on all claims in both counts, arguing that Reed has failed to establish a prima facie case for her ADEA employment discrimination claim. It also argues that it has complied with the arbitrator's decision, which contains no provision for monetary relief, and that the remainder of Reed's breach of contract claims are unexhausted and thus unreviewable by the Court.

**DISCUSSION**

Under Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those facts "that might

affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). Where, as here, cross-motions for summary judgment are filed, "the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016) (alteration omitted) (quoting 10A Charles Alan Wright et al., Federal Practice & Procedure § 2720 (3d ed. 2016)).

WAPA first argues summary judgment should be granted in its favor on Reed's ADEA termination claim because there is no evidence in the record that Reed was replaced by a sufficiently younger employee. While Reed asserts a termination-based ADEA claim in her Fourth Amended Complaint, she now argues the "very essence of [her] claim is that she was reassigned, not replaced," to sorting mail and making night deposits following her reinstatement. Opp'n to Mot. for Summ. J. 3. WAPA maintains summary judgment is also warranted because Reed failed to exhaust her administrative remedies by filing her demotion claim with the Equal Employment Opportunity Commission, and, in any event, she has failed to establish a prima facie case of wrongful demotion.

The ADEA prohibits an employer from "discriminat[ing] against any individual with respect to [that person's] compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a prima facie case of age discrimination, Reed must show that that "she was over forty, (2) is qualified for the position, (3)

suffered an adverse employment decision, (4) and was ultimately replaced by a person sufficiently younger to permit an inference of age discrimination." *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (citation omitted). "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (internal quotation marks and citation omitted). If the Reed establishes a prima face case, WAPA must "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id*. (internal quotation marks and citation omitted).

Reed has failed to establish the fourth element of a prima facie case for her termination-based age discrimination claim.[4] During oral argument, Reed asserted she could establish the fourth element through remarks made by Leonard and Simon. However, there is no evidence connecting the single age-related remark by Leonard in 2012 and Simon's "several" age-related remarks in 2012 and 2013 to WAPA's decision to terminate Reed's employment, or revealing the context within which the staements were made. Additionally, these statements were not made during or in connection with the grievance proceedings, instituted after a customer accused Reed of theft. *See Hodczak v. Latrobe Specialty Steel Co*., 451 F. App'x 238, 241 (3d Cir. 2011) (affirming grant of summary judgment on ADEA claim because, in part, "although several of the [alleged discriminatory] statements were made by [] executives, they were temporally remote from the decision to discharge [the employees], and completely unrelated to the investigation regarding [plaintiffs'] violation of [internal policy]"). In addition to Leonard and Simon, Hodge

---

[4] Reed concedes there is no evidence that she was replaced by anyone after her termination, *see* Opp'n to Mot. for Summ. J. 3, and thus must establish other facts that raise the inference of age-related discrimination, *see Willis*, 808 F.3d at 644.

and Nibbs—who had not made any age-related references toward Reed—participated in the grievance process, and Hodge made the ultimate decision to uphold Reed's termination.

Reed's new demotion claim similarly fails because Reed cannot establish an adverse employment action or that she was replaced by a sufficiently younger person. "The ADEA defines an adverse employment action as discrimination with respect to the compensation, terms, conditions, or privileges of employment." *Swain v. City of Vineland*, 457 F. App'x 107, 110 (3d Cir. 2012) (internal quotation marks and citation omitted). It requires "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). There is no such adverse action here. Reed concedes her salary was not decreased, *see* Opp'n to Mot. for Summ. J. 4, and handling mail deposits was part of her job description as Senior Cashier, *see* WAPA Statement of Undisputed Facts Ex. 2, at 3 (the Senior Cashier "[a]ccepts mail payments and records amount paid on cash register").[5] Further, her subjective preference to perform other tasks in the job description are "insufficient to establish an adverse employment action." *See Swain*, 457 F. App'x at 110 (holding plaintiff's "subjective preference" for a particular position was insufficient to establish an adverse employment action under the ADEA).[6]

Reed also has neither pointed to any facts that give rise to the inference that her reassignment was age-related, nor to any evidence that she was replaced after her reassignment.

---

[5] Reed submitted a declaration with her motion for partial summary judgment in which she states that she was relegated to "only doing mail and night drop deposits." *See* Reed Mot. for Summ. J. Ex 2, ¶ 28. These statements, without more, do not establish that her responsibilities were significantly different than those outlined in the job description of Senior Cashier.

[6] The Court need not resolve whether Reed properly exhausted her demotion claim because she has not established a prima facie case.

Even if Reed's prior duties were redistributed to other employees, "a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *See Millard v. Corestates Fin. Corp.*, No. 98-5028, 2001 WL 1175135, at *2 (E.D. Pa. 2001) ("[A] person is not 'replaced' for purpose of a prima facie age discrimination action where duties are undertaken by a younger person or persons already employed by the [d]efendant." (citing *Solt v. Alpo Petfoods, Inc.*, 837 F. Supp. 681, 685 (E.D. Pa. 1993)).

Next, WAPA and Reed both move for summary judgment on Reed's arbitration enforcement and contract claims. WAPA contends that it has complied with the arbitrator's award, which contained no provision for back pay or any other retrospective relief, and it argues Reed's remaining contract claims are barred from judicial review because she did not exhaust her internal remedies pursuant to the CBA prior to filing suit. Reed requests that the Court grant summary judgment in her favor because the arbitration award affirmed the Union's grievance—entitling her to the award of back pay and other benefits. She argues the Union's breach of its duty of fair representation excuses her from exhausting the internal grievance process and following the procedures would have been futile.

The Court finds WAPA has complied with the arbitrator's award by reinstating Reed without providing back pay or other benefits for two reasons. First, Reed provides no evidence that the Union requested back pay or other benefits during the grievance or arbitration proceedings, or that it "intended that Reed be made whole."[7] Reed Mem. of Law in Supp. of Partial Summ. J. 5.

---

[7] While Reed does put forth an October 23, 2013, letter from Hodge to Reed's Union representative as evidence, this letter—prepared by WAPA and not the Union—does not establish that the Union requested back pay or other benefits. Read in context, this portion of the

9

Second, the award itself makes no mention of back pay or other benefits, and the relief granted appears to be prospective. WAPA Statement of Undisputed Facts Ex. 2, at 81 (award stating only that WAPA "did not present clear and convincing evidence that Ms. Reed was justly terminated, and thus the grievance by the Union will be upheld"). Reed provides no support for her argument that an order of reinstatement automatically includes an award of back pay, especially in instances where there appears to be some indication of possible employee misconduct.[8] *See* WAPA Statement of Undisputed Facts ¶ 116 (arbitrator noting that it "[was] possible that Ms. Reed took more money than she should have from the customer"). On the contrary, courts have found that an arbitrator's award of reinstatement need not include an award of back pay. *Cf. Williams v. Dept. of the Air Force*, 7 F. App'x 935, 937 (Fed. Cir. 2001) (finding arbitrator did not abuse his discretion by reinstating employee without back pay based on employee's misconduct); *Garza/Phelps Dodge Refining Corp. v. Phelps Dodge Refining Corp./Garza*, 262 S.W.3d 514, 516–17 (Tex. Ct. App. 2008) (rejecting employee's claim that he was entitled to back pay where back pay was not expressly addressed in arbitration award); *Freeman v. Cty. of Nassau*, 143 A.D.2d 663, 664 (N.Y. App. Div. 1998) (affirming arbitrator's denial of back pay and benefits, even though employee was found not guilty of charges, because

---

letter is nothing more than Hodge's summary of the grievance proceedings before he concluded that there was no basis to reverse Reed's termination. See Docket No. 103, Ex. 2, at 11. In addition, the Court notes that the Union's closing argument brief makes no mention of a monetary award of any kind, *see* Docket No. 103, Ex. 2, at 12–25, and simply requests that "the grievance be granted" in its prayer for relief, *id*. at 25.

[8] Although Reed cites to *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946) for the proposition that an award of reinstatement without back pay "flies in the face of justice and equity," Reed Mem. of Law in Supp. of Partial Summ. J. 6, this quotation is not found in *Bigelow*, which involved an antitrust action.

employee's conduct merited some degree of punishment). In the absence of an award of back pay or benefits in the arbitrator's decision, Reed's claim fails.[9]

As to Reed's remaining claims for breach of contract concerning funding her retirement account, funding her GERS Retirement Personal Loan Account, and WAPA's donated leave program, they are unexhausted. *See Manning v. Bouton*, 678 F.2d 13, 16 (3d Cir. 1982) (affirming summary judgment in favor of a defendant employer on the grounds that plaintiff employee failed to exhaust his remedies under the collective bargaining agreement prior to bringing suit in federal court). Reed does not dispute that she failed to exhaust these claims; rather, she argues that she was not required to exhaust them because the Union breached its duty of fair representation, and any attempts to exhaust would have been futile. *See* Opp'n to Mot. for Summ. J. 4–6.

Insofar as Reed seeks to argue that the Union breached its duty of fair representation before she was reinstated, and this breach excuses her failure to exhaust, the Court agrees with WAPA that this line of argument is barred by the doctrine of collateral estoppel based on Reed's previously-filed charge of unfair labor practices against her Union with the Public Employees Relations Board (PERB). The party seeking to assert collateral estoppel must establish: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action." *Newman v. McKay*, No. 12-287, 2013 WL

---

[9] Reed's declaration regarding customary awards of back pay following employee reinstatement at WAPA does not create a genuine issue of material fact concerning this issue. Her statements provide no insight into whether the other employees had requested back pay or other benefits during their grievance or arbitration proceedings, been awarded back pay or other benefits in the arbitrator's decision, or in any way were involved in comparable proceedings. *See* Reed Mot. for Summ. J. Ex. 4, ¶¶ 35, 36, 37.

3155339, at *2 (V.I. Super Ct. June 18, 2018). In Reed's previously-filed charge of unfair labor practices, she argued that the "[U]nion failed to properly represent her after she was terminated from employment with WAPA"—essentially the same argument she asserts here. WAPA Statement of Undisputed Facts Ex. 2, at 90. Applying the duty of fair representation standard—that a union "must not act with intentional discrimination, in bad faith, or in an arbitrary or capricious manner," *id*. at 92, PERB concluded the Union did not breach its duty of fair representation in the manner in which it handled Reed's grievance. In arriving to this conclusion, it reasoned that the Union represented Reed at multiple grievance proceedings, filed appeals on her behalf, and ultimately had her grievance upheld. *See id*. at 93–94. These findings were essential to PERB's ultimate conclusion that the Union did not engage in unfair labor practices. *Id*. at 92, 94–95. And Reed, who elected to proceed pro se and have her nephew accompany her during certain parts of the PERB proceedings, was also adequately represented. *See id.* at 89; *Newman*, 2013 WL 3155339, at *2 (finding that although plaintiff proceeded pro se in prior action, it was his choice to proceed pro se and thus he had been adequately represented for the purposes of collateral estoppel).[10]

---

[10] To the extent Reed maintains the Union breached its duty to her after she was reinstated, this argument is also unpersuasive. Reed contends she sent her Union Representative Ian Forde a letter concerning back pay after the arbitration decision was issued, and he "neglected to provide her with guidance as to exactly what review procedures were available to her and how they should be followed." Opp'n to Mot. for Summ. J. 5. As support, she cites to ¶ 21 in her "Counterstatement of Facts," but the supporting document to ¶ 21 is a letter from Reed to Hodge, not Forde. Resp. to Def.'s Statement of Undisputed Material Facts Ex. 1, at 2. The record does, however, establish that Forde emailed WAPA twice on Reed's behalf after the arbitration decision was issued, once prior to and once post-reinstatement. *See* WAPA Statement of Undisputed Facts Ex. 2, at 106–07. WAPA responded to one of Forde's emails, explaining that Reed was not entitled to back pay because the Union did not request back pay or present any evidence related to the issue at the arbitration hearing, and the arbitrator did not award any form of back pay. *See id*. at 105. The Union's decision to not press this issue further does not establish any breach of the Union's duty of fair representation.

Even if not barred by the doctrine of collateral estoppel, Reed's conclusory statements that the Union breached its duty are unpersuasive. Reed has not offered any argument, let alone evidence, as to how the Union's representation of Reed—from the initial first-step grievance hearing until the final arbitration hearing where the Union ultimately *prevailed* on Reed's behalf—was "arbitrary, discriminatory, or in bad faith." *See Anderson v. Am. Fed. of Teachers*, No. 2016-47, 2017 WL 3332271, at *4 (V.I. Aug. 3, 2017) (collecting cases in which unions' failure to communicate, negligent actions, or exercise of poor judgment did not constitute a breach of their duty of fair representation).

Reed's argument that the exhaustion requirement should be excused because it would have been futile is similarly unavailing. In support, Reed's relies on *Rivera v. Government of the Virgin Islands*, 635 F. Supp. 795 (D.V.I. 1986), which held that a union's perfunctory handling of a grievance excused the plaintiff from exhausting his disputes. This case is inapposite. In *Rivera*, a union member contacted the union twice and followed up with a letter regarding his labor dispute, but the union failed to respond. *See* 635 F.Supp. at 799. Here, Reed notably fails to point to any evidence in the record that demonstrates she even attempted to contact the Union about her back pay,[11] retirement account, GERS Retirement Personal Loan Account, or the donated leave program after she was reinstated. Reed has demonstrated only that she sent a letter to Hodge—asking what she should expect from WAPA because the arbitrator had upheld her grievance—who failed to respond. Such limited action does not establish the futility in obtaining assistance from the Union. *See Allard v. Hess Oil V.I. Corp.*, No. 69-1992, 1996 WL 35048108, *5 (D.V.I. Dec. 20, 1996) (holding plaintiff's complaints to her "foreman, supervisors and other management officers" were insufficient to demonstrate futility in pursuing her grievances

---

[11] *See supra* footnote 10.

through the union because plaintiff failed to allege that she sought assistance from the union, or the union failed to prosecute her grievance (internal citation omitted)).

The Court finds that (1) Reed has failed to establish a prima facie case of age discrimination; (2) WAPA has complied with the arbitration award; and (3) Reed's breach of contract claims are unexhausted. Accordingly, WAPA's motion for summary judgment is granted, and Reed's motion for partial summary judgment is denied. An appropriate order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, J.